UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
JAMES B. MCDONALD,

                    Plaintiff,

          - against -

MICHAEL J. ASTRUE,
Commissioner,
Social Security Administration,

                    Defendant.
----------------------------------------------------X

**ORDER**
08-CV-3916 (SJF)

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y

★ SEP 30 2011 ★

LONG ISLAND OFFICE

FEUERSTEIN, J.

On September 24, 2008, plaintiff James B. McDonald ("plaintiff") commenced this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of defendant Commissioner of the Social Security Administration's (the "Commissioner") determination that plaintiff was not eligible to receive Social Security disability benefits prior to August 1, 2005. Both parties move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth herein, both parties' motions are denied, and this matter is remanded for further proceedings consistent with this order.

1

I.  Background

   A.  Plaintiff's Background and Medical History.

Plaintiff was born in 1944 and worked as a carpenter from 1964 to 2000. Plaintiff's Memorandum in Support of Cross-Motion ("Pl. Br.") [Docket No. 20], at 2. Plaintiff has stated that his job as a carpenter required him to stand for four (4) hours a day and walk for four (4) hours a day, as well as to frequently lift and carry light fixtures and doors weighing fifty (50) pounds or more. Id.; Transcript ("Tr.") 49. According to plaintiff, he retired on April 30, 2000 because pain in his back and right shoulder rendered him unable to perform the tasks necessary to do his job. Pl. Br. at 2; Tr. 47-48.

Plaintiff's primary care physician prescribed anti-inflammatory medication for his pain, Pl. Br. at 3, and on May 13, 2003, plaintiff first visited orthopedist Dr. Kenneth Glass. Pl. Br. at 2. According to a letter from Dr. Glass, plaintiff had complained during the appointment of "persistent pain in the area of the neck, right scapula, right shoulder and clavicle." Tr. 95. Dr. Glass wrote that plaintiff was suffering from a variety of pains, including "pain at the area of the cervical spine, paravertebral pain, pain with flexion and extension, pain with spasm," "pain that radiates to the area of the deltoid musculature and right shoulder," "pain on extremes of range of motion and activity at the area of the right shoulder," and "pain to deep palpitation at the area of the right clavicle." Tr. 95-96. Dr. Glass noted that there was no evidence of "deformity," "crepitus," or "instability." Tr. 96. Dr. Glass' impression was that plaintiff had a "sprain type injury about the cervical spine with right rotator cuff tendonitis." Tr. 96. The doctor recommended, among other things, "limitation of activity" and follow-up visits to his office. Tr.

96. Plaintiff underwent a whole body bone scan on May 16, 2003. Tr. 98.

Plaintiff visited Dr. Glass again several weeks later, on May 27, 2003. Tr. 94. Dr. Glass' notes state that plaintiff's bone scan had been "essentially unrevealing except for minimal arthritic changes." Tr. 94. Plaintiff stated that he had been performing a physical therapy program, that his "symptoms ha[d] improved," and that his "pain ha[d] declined." Tr. 94. Dr. Glass noted that plaintiff's "range of motion [was] improving" and that there was "less pain referable to the area of the neck and right shoulder." Tr. 94. Plaintiff was to visit Dr. Glass again in "two to four weeks." Tr. 94.

The record indicates that plaintiff did not visit Dr. Glass again until October 27, 2005[1] regarding pain in his right shoulder, right neck, and lower back that he had been experiencing for approximately the previous two months. See Tr. 93. The file noted that plaintiff had "full range of motion of the neck," "full range of motion of the [right] shoulder with mild crepitus and mild discomfort," and "full range of motion of the lower back with mild discomfort." Tr. 93. "X-rays of [the] right shoulder reveal[ed] negative fracture or dislocation, mild osteoarthritic changes," and "[x]-rays of the lumbar spine reveal[ed] negative fracture or dislocation and also only mild osteoarthritic changes." Tr. 93. At that time, plaintiff was diagnosed with "[r]ight shoulder sprain and lower back myofascial spasm." Tr. 93. Dr. Glass noted that plaintiff "had relief with physical therapy when treated in 2003." Tr. 93.

Plaintiff's next visit to Dr. Glass was on November 18, 2005. Tr. 92. During that visit, plaintiff stated that he had "persistent discomfort" at his "lumbar spine and right shoulder." Tr.

---

[1] It is unclear from the record whether plaintiff actually met with Dr. Glass or with Mr. Thomas Armocida, RPA-C during this visit.

3

92. Dr. Glass found that plaintiff's "motion and performance" were "fair," and attributed plaintiff's symptoms to "lower back syndrome" and "right shoulder impingement syndrome." Tr. 92. He recommended physical therapy and an MRI of plaintiff's right shoulder. Tr. 92. The November 2005 MRI revealed changes "compatible with chronic impingement syndrome" and "underlying tendinitis or tendinosis." Tr. 97. However, "[n]o discrete tear [was] seen in the tendons of the rotator cuff or glenoid labrum." Tr. 97.

When plaintiff saw Dr. Glass next, on December 7, 2005, plaintiff stated that his pain had declined. Dr. Glass recommended continued physical therapy and a follow-up office visit. Tr. 91. On January 11, 2006, plaintiff again visited Dr. Glass regarding his "right shoulder and lower back." Tr. 90. According to Dr. Glass' notes, plaintiff stated that his symptoms "wax and wane." Tr. 90. Dr. Glass noted that plaintiff's "motion and performance" were "fair" and that there was "no evidence of deformity or dystropthy." Tr. 90. The doctor's impression was that plaintiff suffered from "lower back syndrome" and "impingement syndrome." Tr. 90.

In a report dated March 16, 2006, prepared for the New York State Office of Temporary and Disability Assistance's Division of Disability Determinations, Dr. Glass wrote that plaintiff suffered from "pain," "stiffness," and a "limited range of motion." Tr. 83. Plaintiff's treatment consisted of "orthopedic management" and "physical therapy." Tr. 84. Dr. Glass did not complete a section of the form regarding plaintiff's ability to perform work-related activities. Tr. 86.

In June 2008, after the administrative law judge ("ALJ") had issued his decision, Dr. Glass completed an additional "medical assessment form," in which he stated that plaintiff was limited to carrying ten (10) pounds at a time due to his shoulder pain. Tr. 120. Dr. Glass further

4

stated that plaintiff was limited to two (2) hours of standing or walking a day, four (4) hours of sitting a day, and four (4) hours a day of other activities, including climbing, balancing, stooping, kneeling, and crawling. Tr. 121.

B.   Administrative Proceedings.

On January 31, 2006, plaintiff applied for Social Security disability benefits, seeking payment of benefits retroactive to April 30, 2000. Pl. Br. at 2; Tr. at 45-46. Plaintiff stated that he had retired on that date "[d]ue to back pain and right shoulder pain," which caused difficulty "sitting, standing, [and] walking." Tr. 48. Plaintiff subsequently amended his request to seek payment of benefits retroactive only to May 13, 2003, the date of his first visit to Dr. Glass. Pl. Br. at 2.

On April 11, 2006, the Social Security Administration approved plaintiff's claim, but found that plaintiff only became disabled on August 1, 2005, and therefore authorized payment of benefits beginning on that date. See Tr. 27-28. Plaintiff appealed the Administration's determination to the extent it found August 1, 2005, rather than May 13, 2003, as the date of onset of his disability, Tr. 29, and on May 6, 2008, plaintiff appeared with counsel before ALJ Andrew S. Weiss. Tr. 123-32. At the hearing, plaintiff's attorney argued that plaintiff's "shoulder and back pain were no different in '03" and that "there's been no indication that there's been any difference in the condition [between 2003 and 2005]." Tr. 128.

By order dated May 28, 2008, ALJ Weiss affirmed the Commissioner's initial determination, concluding that plaintiff "has not been under a disability, as defined in the Social

5

Security Act, since May 17, 2003, and has only been under a disability since August 1, 2005 (20 CFR 404.1520(g))." Tr. 16. ALJ Weiss noted that plaintiff had been suffering from "severe" impairments since May 17, 2003, including "neck pain" and "right shoulder pain," Tr. 13, but that plaintiff reported an "improvement" in his symptoms several weeks later, after commencing physical therapy, Tr. 15. ALJ Weiss further noted that Dr. Glass "did not provide an opinion as to the claimant's residual functional capacity" when he examined plaintiff in 2003. Tr. 15. The ALJ found that by August 1, 2005, "the evidence show[ed] a worsening of the claimant's shoulder condition," as well as the first evidence of back pain. Id. at 15.

On that basis, the ALJ found that plaintiff "retained the residual functional capacity for medium work"[2] prior to August 1, 2005, but after that date "retained only the residual functional capacity to perform light work due to increasing pain and limitation of function . . . ."[3] Tr. 15. Pursuant to Rule 202.6 of Table No. 2 in the Medical-Vocational guidelines, see 20 C.F.R. Pt. 404, Subpt. P, App.2, the ALJ concluded that plaintiff's limitation to "light" work on August 1, 2005 rendered him "disabled" on that date. ALJ Weiss dismissed plaintiff's statements about the intensity and persistence of these symptoms prior to August 1, 2005 as "not credible." Tr. 14.

Plaintiff requested review of ALJ's Weiss' decision by the Administration's Appeals Council. Tr. 6. In a letter dated July 21, 2008, the Appeals Council denied plaintiff's request for review. Tr. 2-5.

On June 3, 2008, plaintiff requested review of ALJ Weiss' decision by the

---

[2] "Medium work" involves lifting up to fifty (50) pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five (25) pounds. 20 C.F.R. § 404.1567(c).

[3] "Light work" involves lifting up to twenty (20) pounds at a time with frequent lifting or carrying of objects weighing up to ten (10) pounds. 20 C.F.R. § 404.1567(b).

Administration's Appeals Council, arguing that the decision was not supported by substantial evidence. Tr. 6, 105. In a notice dated July 21, 2008, the Appeals Council denied plaintiff's request for review. Tr. 2-4. This action followed. Pl. Br. at 3.

II.     Discussion

      A.     Standard of Review

           1.     Review of the Commissioner's Determination.

"The scope of review of a disability determination under 42 U.S.C. § 423(a)(1) . . . involves two levels of inquiry." Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987) (citing cases). First, the Court must determine whether the Commissioner applied the correct legal standards. Id. Second, the Court must determine whether the Commissioner's decision was supported by "substantial evidence." Id. (citing 42 U.S.C. § 405(g)); see also Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) ("[W]e conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied."). The district court "must affirm the Commissioner's decision if it is supported by substantial evidence even if [it] might have ruled differently were it to have made the initial determination." Beckles v. Barnhart, 340 F.Supp.2d 285, 287 (E.D.N.Y. 2004) (citing Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982)).

In this context, substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed.2d 842 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); Zabala v. Astrue, 595 F.3d 402, 408 (2d Cir. 2010). "In determining whether substantial evidence supports a finding of the [Commissioner], the court must not look at the supporting evidence in isolation, but must view it in light of the other evidence in the record that might detract from such finding, including, any contradictory evidence and evidence from which conflicting inferences may be drawn." Rivera v. Sullivan, 771 F. Supp. 1339, 1351 (S.D.N.Y.1991).

2. Plaintiff's Eligibility for Social Security Disability Benefits

Title II of the Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will be determined to be under a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." Id. at § 423(d)(2)(A).

Regulations of the Social Security Administration establish a five-step sequential analysis for evaluating disability claims:

First, the [Commissioner] considers whether the claimant is

> currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform . . . . [T]he claimant bears the burden of proof as to the first four steps, while the [Commissioner] must prove the final one.

DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (internal quotation marks omitted); see also 20 C.F.R. § 404.1520. The Commissioner's burden at step five (5) is usually determined "by resorting to the applicable medical vocational guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1986)." Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986). Taking into account the claimant's residual functional capacity, age, education, and work experience, the grids indicate whether the claimant is able to engage in any substantial gainful work existing in the national economy. Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999).

B.  Analysis.

The issue presented in this case is whether there is "substantial evidence" to support the

Commissioner's finding that plaintiff was not "disabled" between May 13, 2003 and July 31, 2005. Plaintiff argues that since he was just as limited by his pain in May 2003 as he was in August 2005, the Commissioner's finding of August 1, 2005 as the onset date is not supported by substantial evidence. Pl. Br. at 1; Tr. 80, 128. Plaintiff does not challenge the Commissioner's application of the law.

The Court finds that the record is not sufficiently developed to evaluate plaintiff's physical capabilities and limitations between May 13, 2003 and July 31, 2005, and that the Commissioner's decision is therefore not supported by substantial evidence. For that reason, this action is remanded for further administrative proceedings consistent with this order. See Kirkland v. Astrue, No. 06 CV 4861 (ARR), 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008) (internal citations omitted) (remand is "appropriate where, due to . . . significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim.")

ALJ Weiss' central conclusion was that plaintiff's condition deteriorated in August 2005, Tr. 15, which was the critical point at which plaintiff lost the ability to perform "medium" work and became "disabled" pursuant to the Medical-Vocational Guidelines.[4] Tr. 14-16. Even assuming that plaintiff's condition did grow worse over those two years,[5] the record does not

---

[4] The Commissioner presumably chose August 2005 as the onset date because plaintiff had complained to Dr. Glass on October 27, 2005 of pain lasting for the previous two months. See Tr. 93.

[5] Plaintiff disputes the notion that his pain or physical condition was worse in October 2005 than it was in May 2003, see Pl. Br. 1, and Dr. Glass' observations of plaintiff's symptoms are largely similar over the course of his treatment. Compare Tr. 95 (noting "persistent" pain in the areas of the neck, right scapula, right shoulder and clavicle in May 2003) with Tr. 92 (noting "persistent discomfort" at "lumbar spine and right shoulder" in November 2005). However, plaintiff himself testified that his condition had grown worse since he began treatment with Dr.

contain substantial evidence that plaintiff was able to perform the "full range of medium work" until August 1, 2005. Dr. Glass' records indicate that plaintiff was suffering from "persistent" pain and a "sprain type injury about the cervical spine with right rotator cuff tendonitis" in May 2003. Tr. 96. Although plaintiff evidently experienced some relief from physical therapy in late May 2003, see Tr. 94, this does not necessarily indicate that he was able to perform "medium" work at that time. In other words, the record does not indicate that plaintiff was not already limited to "light" work in 2003, only to have his condition become more severe in 2005.

1.   Plaintiff's Functional Limitations Prior to August 1, 2005.

Before reaching a decision about a claimant's residual functional capacity, the ALJ must "identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Robins v. Astrue, No. CV-10-3281 (FB), 2011 WL 2446371, at *4 (E.D.N.Y. June 15, 2011) (quoting S.S.R. 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996)); Derouin v. Comm'r of Soc. Sec., Civ. No. 7:05-CV-211 (LEK/RFT), 2008 WL 4279503, at *7 (N.D.N.Y. Aug. 18, 2008) (same). A function-by-function assessment includes analysis of plaintiff's abilities to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch and must be based on medical

---

Glass in 2003, Tr. 130-31, and I find that this element of the ALJ's decision (*i.e.*, finding that plaintiff's condition had deteriorated between 2003 and 2005) is supported by substantial evidence.

reports. Yannone v. Astrue, No. 06 CIV. 15502(SCR)(GAY), 2010 WL 743963, at *6 (S.D.N.Y. Mar. 3, 2010); S.S.R. 96-8p, 1996 WL 374184, at *1. The ALJ's residual functional capacity assessment must address an "individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Derouin, 2008 WL 4279503, at *8.

Although ALJ Weiss concluded that plaintiff was capable of performing "medium" work prior to August 1, 2005, he failed to perform a "function-by-function" analysis of plaintiff's work-related abilities, and it is therefore unclear how he arrived at his conclusion. Indeed, the only function-by-function analysis in the record that was performed before the ALJ issued his decision – presumably completed by the Social Security Administration – concluded that plaintiff was limited to carrying twenty (20) pounds occasionally and ten (10) pounds frequently. Tr. 99-104. This reflects functional abilities far below those required to perform "medium" work, which includes carrying up to fifty (50) pounds at a time, with frequent lifting or carrying of objects weighing up to twenty-five (25) pounds.[6]

The record indicates that the ALJ failed to obtain any assessment of plaintiff's work-related abilities prior to August 1, 2005 from plaintiff's treating physician. Dr. Glass' reports detail plaintiff's symptoms and diagnosis, but do not address the amount of weight plaintiff was able to lift or the length of time he was able to sit or stand during a typical workday. It appears that the assessment by Dr. Glass of plaintiff's abilities to walk, sit, and carry was in the medical

---

[6] The analysis does not distinguish between plaintiff's abilities before and after August 1, 2005, making it all the more unclear how ALJ Weiss concluded that plaintiff could perform medium work prior to that date.

assessment form dated June 23, 2008, Tr. 120-22, almost a month after ALJ Weiss issued his decision, in which Dr. Glass opined that plaintiff was limited to carrying ten (10) pounds at a time and standing or walking for two hours a day.[7] ALJ Weiss noted that Dr. Glass "did not provide an opinion as to the claimant's residual functional capacity," Tr. 15, and the April 7, 2006 "Physical Residual Functional Capacity Assessment states that "TP did not provide his medical opinion regarding work related activities." Tr. 103.[8]

The ALJ had no evidence addressing plaintiff's specific physical capabilities prior to August 1, 2005, and failed to adequately explain the basis for his conclusions with respect to this issue. In such a case, remand is appropriate to develop an adequate record on which to render an opinion as to plaintiff's functional capabilities. See, e.g., Williams v. Astrue, No. 09-CV-3997 (KAM), 2010 WL 5126208 (E.D.N.Y. Dec. 9, 2010) (remanding case for completion of function-by-function assessment); Derouin, 2008 WL 4279503, at *7 (same); Brown v. Barnhart, No. 01-CV-2962 (JG), 2002 WL 603044 (E.D.N.Y. Apr. 15, 2002) (same); Mardukhayef v. Comm'r of Soc. Sec., No. 01-CV-1324 (JG), 2002 WL 603041, at *5 (E.D.N.Y. Mar. 29, 2002) (same).

On remand, the Commissioner must perform this function-by-function analysis of

---

[7] Although the ALJ asked plaintiff, "[H]ow much could you lift in 2003 . . . ?," Tr. 129, plaintiff's answer to this question was not responsive, and the ALJ failed to pursue the issue further.

[8] A "Quality Assurance Deficiency Summary" dated March 7, 2006 states that "Dr. Cass [sic]'s office" should be contacted for "comment on the claimant's ability to perform work that requires heavy lifting and frequent reaching." Tr. 66. A staff member at Dr. Glass' office later stated that plaintiff was "unable to work," but "did not provide any medical findings to support the TP's opinion." Tr. 70.

plaintiff's work-related abilities between May 17, 2003 and July 31, 2005 before reaching a conclusion about the exertional level of work that plaintiff was capable of performing during that time period. The Commissioner must take reasonable measures to further develop the record with respect to this issue.

2. Credibility Determination.

The ALJ failed to adequately explain his assessment that plaintiff was "not credible," even though his complaints about pain were consistent with objective medical evidence. See Tr. 14. Plaintiff stated that he was "unable to stand for more than twenty minutes or sit for more that [sic] half an hour" and that lifting "heavy" items caused "excruciating pain." Tr. 67; see also Tr. 130. Plaintiff's representations, if accepted as true, may have warranted a finding that he was unable to perform "medium" work prior to August 1, 2005. Although the Court expresses no opinion as to plaintiff's credibility, this matter must be remanded so that the Commissioner can specifically articulate the reasons for this finding.

The ALJ has "discretion to evaluate the credibility of a plaintiff and arrive at an independent judgment." Novak v. Astrue, 07 Civ. 8435, 2008 WL 2882638, at *2 (S.D.N.Y. Jul. 25, 2008). This Court gives "great deference" to the ALJ's credibility determinations because "the ALJ heard the testimony and observed the demeanor of the witnesses." Webster v. Astrue, No. 10 Civ. 4054 (JGK), 2011 WL 3518266, at *5 (S.D.N.Y. Aug. 11, 2011).

However, "[i]n determining the claimant's residual functional capacity, an ALJ is

required to take into account a claimant's assertions of pain and other limitations." Mira v. Astrue, No. 09-cv-2012 (SLT), 2011 WL 4056050, at *13 (E.D.N.Y. Sept. 2, 2011) (citing Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010)). "[A] claimant's subjective evidence of pain is entitled to great weight where . . . it is supported by objective medical evidence." Simmons v. U.S. R.R. Ret. Bd., 982 F.2d 49, 56 (2d Cir. 1992). Moreover, "[a] claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." Mira, 2011 WL 4056050, at *18 (quoting Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983)). In this case, plaintiff had worked without interruption for more than thirty-five (35) years. Pl. Br. 2.

A claimant's credibility must be evaluated in a two-step process: (1) first, the ALJ must determine whether the claimant has medically determinable impairments "which could reasonably be expected to produce the pain or other symptoms alleged," and (2) second, the ALJ must "evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work." Rockwood v. Astrue, 614 F.Supp.2d 252, 270-71 (N.D.N.Y. 2009) (citing S.S.R. 96-7p, 1996 WL 374186, at *2; 20 C.F.R. § 404.1529(c)). In evaluating a claimant's credibility, the ALJ should consider a list of factors, including (1) "claimant's daily activities," (2) "location, duration, frequency, and intensity of claimant's symptoms," (3) "precipitating and aggravating factors," (4) "type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms," (5) "other treatment received to relieve symptoms," (6) "any measures taken by claimant to relieve symptoms," and (7) "any other factors concerning claimant's functional limitations and restrictions due to symptoms." Id. (citing 20 C.F.R. §§ 416.929(c)(3)(i)-(vii)).

"If an ALJ rejects subjective testimony concerning pain, the ALJ 'must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence.'" Mira, 2011 WL 4056050, at *13 (quoting Brandon v. Bowen, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)). Based upon the fact that the ALJ did not engage in any meaningful discussion of the above factors, and his decision does not adequately explain why he found the plaintiff's representations to be "not credible," remand is required. See Mira, 2011 WL 4056050, at *18.

III. Conclusion

For the reasons stated above, both parties' motions for judgment on the pleadings are denied, and this matter is remanded for a rehearing pursuant to 42 U.S.C. § 405(g).

On remand, the Commissioner shall: (1) perform function-by-function assessments of plaintiff's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, and crouch between the dates of May 17, 2003 and July 31, 2005, and will further develop the record to the extent necessary to perform this assessment; (2) make specific findings as to whether plaintiff was capable of performing "medium work" and whether plaintiff qualified as "disabled" between the dates of May 17, 2003 and July 31, 2005; and (3) explain his determination of plaintiff's credibility with sufficient specificity for the Court to review the issue of whether his determination is supported by substantial evidence.

The Clerk of Court is directed to enter judgment accordingly and to close this case.

**SO ORDERED.**

_/s/ Sandra J. Feuerstein_
Sandra J. Feuerstein
United States District Judge

Dated:	September 30, 2011
	Central Islip, New York